**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Dawn Carter, as personal representative of the Estate of Jereme Loydd Mortinson, deceased, and Dawn Carter, on behalf of the heirs and next of kin of Jereme Loydd Mortinson, deceased, | ) ) ) ) ) ) | **ORDER DECLINING TO ADOPT REPORT AND RECOMMENDATION** |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| EOG Resources, Inc. and Crude Processing, Inc., | ) ) ) | |
| Defendants. | ) ) | |
| ———————————————— | ) ) | |
| EOG Resources, Inc., | ) ) | Case No. 4:12-cv-003 |
| Third-Party Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| S&S Sales 2008, Inc., | ) ) ) | |
| Third-Party Defendant. | ) ) | |
| ———————————————— | ) ) | |
| S&S Sales 2008, Inc., | ) ) | |
| Fourth-Party Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| RES Investments, LLC, | ) ) ) | |
| Fourth-Party Defendant. | ) | |

Before the Court is Magistrate Judge Karen Klein's "Report and Recommendation on S&S

Sales 2005, Inc.'s Motion for Summary Judgment" filed on July 15, 2014.  <u>See</u> Docket No. 158.

For the reasons set forth below, the Court declines to adopt the report and recommendation and denies S&S Sales 2008, Inc.'s motion for summary judgment.

I.      **BACKGROUND**

This is a wrongful death and survival action brought by the Plaintiff, Dawn Carter, as the personal representative of the Estate of Jereme Mortinson and on behalf of the heirs and next of kin of Mortinson.  Mortinson died after being injured in an explosion on or about December 12, 2009, that occurred while he was operating a truck involved in oil drilling and fracking operations near Williston, North Dakota.  On December 12, 2011, Carter initiated this action in Williams County, North Dakota, against EOG Resources, Inc. ("EOG Resources"); Crude Processing, Inc., f/k/a CCS Midstream Services, LLC, n/k/a Tervita, LLC ("Crude Processing");[1] Superior Well Services, Inc. ("Superior Well Services"); and Halliburton Energy Services, Inc. ("Halliburton"). In the complaint, Carter alleges claims of negligence against EOG Resources, Crude Processing, Superior Well Services, and Halliburton.  See Docket No. 1-1.

The case was removed to federal district court on January 10, 2012.  See Docket No. 1.  On May 1, 2012, EOG Resources brought a third-party complaint against S&S Sales 2008, Inc. ("S&S Sales").  See Docket No. 21.  In its third-party complaint, EOG Resources seeks indemnification from S&S Sales for any judgment entered against EOG Resources in favor of Carter based upon a master service agreement between EOG Resources and S&S Sales.  EOG Resources also requests a declaration that S&S Sales must defend and indemnify it for the contractual claims for defense

---

[1] On February 25, 2014, the Court issued an Order clarifying that CCS Midstream Services, LLC and Crude Processing are separate defendants.  See Docket No. 86.

and indemnity which Halliburton, Crude Processing, and Superior Well Services have each made against EOG Resources, based upon the Carter's claims against each of these contractors.[2]

On September 18, 2012, S&S Sales brought a fourth-party complaint against RES Investments, LLC ("RES Investments"). <u>See</u> Docket No. 31. In its fourth-party complaint, S&S Sales requests the Court declare that RES Investments must defend, indemnify, and reimburse S&S Sales against any and all losses it has incurred and/or may incur "arising from or relating to the underlying wrongful death law suit," including S&S Sales' "defense costs, indemnity obligations, payments, if any," as well as for claims brought or which may be brought against S&S Sales by EOG Resources, Crude Processing, Superior Well Services, and Halliburton. <u>See</u> Docket No. 31, p. 2. S&S Sales also seeks "attorneys' fees and other costs associated with the matters, and any damages, judgments, settlements, or other amounts paid, owing or found to be owed by S&S with respect to these matters." <u>Id.</u>

S&S Sales' fourth-party complaint against RES Investments for declaratory relief is premised upon a Short Term Lease ("Lease") entered into by the parties and dated September 25, 2009. <u>See</u> Docket No. 31-9. Pursuant to the terms of the Lease, RES Investments, as lessor, agreed to lease to S&S Sales, as lessee, a truck/tractor, identified as a "2003 Kenworth #02," and furnish S&S Sales with a competent and qualified driver for the vehicle. The Lease further provided:

> 6.     The parties herein intend to create by this agreement the relationship of Carrier and Independent contractor and not that of employer and employee. The Lessor agrees to indemnify the Lessee and hold the Lessee harmless for loss resulting from sickness or injury including death, sustained by Lessor or by any employee of the Lessor in connection with the operation of said leased equipment. Such loss includes, but is not limited to: payment by the Lessor, or the Lessor's insurance company, of any Worker's Compensation

---

[2] On May 4, 2012, Superior Well Services filed a crossclaim against EOG Resources for indemnification based upon a master service agreement between the parties. <u>See</u> Docket No. 24. Crude Processing filed a separate action in this Court against EOG Resources for declaratory relief, seeking defense and indemnity from EOG Resources based upon a master service agreement entered into by EOG Resources and Crude Processing. <u>See</u> <u>Crude Processing, Inc. v. EOG Resources, Inc.</u>, No. 4:12-cv-093 (D.N.D. July 13, 2012).

benefits, any additional benefits payable under Personal Injury Protection laws in any state, social security, Old Age Benefits and Unemployment Compensation Taxes and Assessments. Lessor shall furnish a CERTIFICATE OF INSURANCE indicating presence of current worker's compensation coverage with the policy effective dates; or, in lieu thereof, Lessor shall sign a statement certifying Lessor has no employees and elects not to cover himself.

. . .

8.     Lessor shall indemnify and hold Lessee harmless from any and all suits, claims, fines, losses, or other expenses arising out of injury to any person of [sic] persons, or damage to property, or unreasonable delay, loss or damage to cargo sustained or which may be alleged to have been sustained by shippers, consignees or interested third parties as a result of any negligence or alleged negligence on the part of the Lessor or the Lessor's employees. Lessor further agrees to provide an endorsement which names Lessee as ADDITIONAL INSURED-INCLUDING CARGO on Lessor's policy. Lessor's policy limits for BODILY INJURY and PROPERTY DAMAGE (BI & PD) shall be at least equivalent to limits specified on Lessee's policy for BI & PD but not less than $1,000,000 combined single limit. Lessor's CARGO policy shall provide coverage limits on a Broad Form basis in sufficient amount to cover complete loss of load. Lessor also agrees to provide a CERTIFICATE OF INSURANCE which specifies coverage limits and which provides written notice to the certificate holder a minimum of thirty (30) days prior to cancellation of said policy. Total policy must be $5,000,000 (1 MM GL/1MM and 4MM umbrella). All certificates require S&S Sales 2008, Inc. as an additional insured, waiver of subrogation, and $100,000 cargo coverage.

See Docket 31-9, p. 3. Jereme Mortinson, an employee of RES Investments, drove the truck/tractor that was the subject of the Lease.

On January 1, 2014, S&S Sales filed a motion for summary judgment as to its fourth-party complaint against RES Investments. See Docket No. 70. In its motion for summary judgment, S&S Sales seeks a declaration that RES Investments must indemnify, defend, and reimburse S&S Sales against any and all losses it has incurred and/or may incur in connection with or arising out of the underlying action, including claims brought by EOG Resources, Crude Processing, Superior Well Services, and Halliburton Energy Services against S&S Sales. RES Investments filed a response in opposition to the motion for summary judgment on March 10, 2014. See Docket No.

91. S&S Sales then filed a reply on March 24, 2014. <u>See</u> Docket No. 100. On June 16, 2014, Judge Daniel L. Hovland referred the motion to Magistrate Judge Karen K. Klein for the issuance of a Report and Recommendation. <u>See</u> Docket No. 116.

Judge Klein issued a "Report and Recommendation on S&S Sales 2008, Inc.'s Motion for Summary Judgment" on July 15, 2014. <u>See</u> Docket No. 158. In the Report and Recommendation, Judge Klein recommended S&S Sales' motion for summary judgment (Docket No. 70) be granted and judgment be entered against RES Investments declaring RES Investments has a duty to defend and indemnify S&S in this proceeding, including an obligation to reimburse S&S for defense costs. Specifically, Judge Klein concluded the language of the indemnity provisions in the Lease between S&S Sales and RES Investments is broad and encompasses a duty by RES Investments to indemnify and defend S&S Sales in these proceedings, including reimbursement for the costs of defending the claims made against S&S Sales. On July 29, 2014, RES Investments filed an objection to the Report and Recommendation. <u>See</u> Docket No. 163. S&S Sales filed a response to RES Investment's objection to the Report and Recommendation on August 12, 2014. <u>See</u> Docket No. 167.

## II.    <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and, therefore, the moving party is entitled to judgment as a matter of law. <u>Davison v. City of Minneapolis, Minn.</u>, 490 F.3d 648, 654 (8th Cir. 2007); <u>see</u> Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id.

The Court must inquire whether the evidence presents sufficient disagreement to require the submission of the case to a jury or if it is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005), *abrogated on other grounds by* Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252.

III.    **LEGAL DISCUSSION**

In support of its motion for summary judgment, S&S Sales contends RES Investments must indemnify and defend S&S Sales based upon the plain and unambiguous language of the Lease. See Docket No. 71, pp. 7-12. RES Investments contends the indemnification provisions of the Lease are unenforceable and unconscionable because S&S Sales sought protection from its own negligence by requiring that RES Investments include S&S Sales as an additional insured. See Docket No. 91, pp. 3-4. In the Report and Recommendation, Judge Klein disagreed with RES Investments' contention and recommended the Court grant S&S Sales' motion for summary judgment because the language of the Lease is broad and encompasses a duty by RES Investments to indemnify S&S Sales for its own negligence. Further, Judge Klein concluded RES Investments

has a duty to defend S&S Sales because the "hold harmless" language of the indemnity provision includes a promise to indemnify and a promise to defend S&S Sales. RES Investment objected to the Report and Recommendation because the Lease is not "an open-ended, unrestricted agreement to insure S&S Sales 2008, Inc." See Docket No. 163, p. 2.


### A.    RES INVESTMENTS' DUTY TO INDEMNIFY

An indemnity is a "contract by which one engages to save another from a legal consequence of the conduct of one of the parties or of some other person." N.D.C.C. § 22-02-01. Indemnification is an equitable remedy "which allows a party to recover reimbursement from another for the discharge of a liability which, as between them, should have been discharged by the other." Specialized Contracting, Inc. v. St. Paul Fire & Marine Ins. Co., 2012 ND 259, ¶ 14, 825 N.W.2d 872 (quoting Olander Contracting Co. v. Gail Wachter Inv., 2002 ND 65, ¶ 15, 643 N.W.2d 29. The construction of a contract for indemnity to determine its legal effect is a question of law for the court. Bridston v. Dover Corp., 352 N.W.2d 194, 196 (N.D. 1984).

In construing indemnity agreements, the court is guided by the principle that ambiguities in indemnification provisions are strictly interpreted against the party receiving indemnity. Specialized Contracting, Inc., 2012 ND 259, ¶ 15, 825 N.W.2d 872 (discussing the distinction between the interpretation of non-insurance contractual indemnity provisions and indemnity provisions in insurance policies). In fact, the North Dakota Supreme Court has consistently concluded an indemnity agreement will not be interpreted to indemnify a party against the consequences of its own negligence unless that construction is very clearly intended. Although the North Dakota Supreme Court does not require express language stating indemnity extends to

the indemnitee's own negligence, it requires the parties to clearly express such intention in the agreement.  See Bridston, 352 N.W.2d at 196.


     **1.**       **Duty by RES Investments to Indemnify S&S Sales for Its Own Negligence**

In the Report and Recommendation, Judge Klein concluded the language of the Lease is broad and encompasses a duty by RES Investments to indemnify S&S Sales for its own negligence. The Court agrees the language of the Lease clearly reveals the intent of RES Investments and S&S Sales was that S&S Sales be indemnified against liability arising from its own acts of negligence. The Lease contains "save harmless" language, which the North Dakota Supreme Court has construed as a promise to protect and defend the indemnitee from claims of third parties.  Id. at 197.  In addition, the Lease contains no language of limitation or qualification excepting claims arising from the negligence of S&S Sales.  See id.  Third, the Lease provides that RES Investments must procure liability insurance and name S&S Sales as an additional insured.  See id.

Based upon these factors, there is no question the parties intended RES Investments to defend and indemnify S&S Sales for the consequences of its own alleged negligence.  However, whether RES Investments must indemnify S&S Sales against any and all losses it has incurred and/or may incur in connection with or arising out of the underlying action, including claims brought by EOG Resources, Crude Processing, Superior Well Services, and Halliburton, requires the Court to further analyze the scope of RES Investments' duty to indemnify.

## 2. Duty by RES Investments to Indemnify S&S Sales for Contractual Liability

In the original complaint, Carter alleged claims of negligence against EOG Resources, Crude Processing, Superior Well Services, and Halliburton. See Docket No. 1-4. Carter did not allege any claim of negligence against S&S Sales. S&S Sales was brought into this action only by way of EOG Resource's third party complaint against S&S Sales. Specifically, in the third-party complaint, EOG Resources seeks a declaration that S&S Sales must defend and indemnify EOG Resources with respect to the negligence claims Carter has made against EOG Resources and with respect to the claims EOG Resources' subcontractors (i.e. Halliburton, Crude Processing, and Superior Well Services) have made against EOG for the claims Carter made against each of those subcontractors. EOG Resources' third party complaint is based upon a master service agreement between EOG Resources and S&S Sales. EOG Resources does not allege any claim of negligence against S&S Sales. The only claims in the entire action against S&S Sales arise from S&S Sales' alleged contractual duty to indemnify and defend EOG Resources. Essentially, S&S Sales is asking this Court to shift its contractual liability to indemnify EOG Resources to RES Investments. Therefore, the Court must determine whether the scope of the indemnification provisions of the Lease entered into between S&S Sales and RES Investments encompass a duty to indemnify and defend against claims arising from S&S Sales' contractual liability to EOG Resources and its subcontractors. The Court concludes it does not.

Neither this Court nor the North Dakota Supreme Court has had the opportunity to analyze the circumstances under which an indemnity agreement covers an indemnitee's contractual liability to a third party. Since the North Dakota Supreme Court has not spoken on the issue, the Court must attempt to predict what that court would decide if it were faced with the issue. In making such prediction, the Court can consider analogous decisions by other courts and relevant

state precedent.  Kovarik v. Am. Family Ins. Grp., 108 F.3d 962, 964 (8th Cir. 1997).  The Court,

therefore, turns to the analogous decisions of *Foreman v. Exxon Corporation*, 770 F.2d 490 (5th

Cir. 1985) and *Jacobs Constructors, Inc. v. NPS Energy Services, Inc.*, 264 F.3d 365 (3d Cir.

2001).

In *Foreman v. Exxon Corporation*, an employee brought suit against Exxon Corporation

("Exxon") and Diamond M Company ("Diamond M") for injuries he sustained while working on

a fixed platform.  770 F.2d at 491.  The platform was owned by Exxon and the drilling rig located

atop the platform was owned by Diamond M.  Exxon had previously entered into contracts with

Diamond M and Offshore Casing Crews, Inc. (Offshore) to perform drilling related services on

the platform.  The contract between Exxon and Offshore provided, in part:

> [Offshore] further agrees to protect, indemnify, and hold harmless Exxon, its
> agents, servants, and employees, from and against all claims, demands and causes
> of action of every kind and character arising in favor of Exxon's employees or third
> parties (third parties being defined for the purposes of this provision as any party
> other than employee of Exxon or an employee of [Offshore]) for injury to or death
> or illness of persons or loss of or damage to property in any way resulting from the
> willful or negligent acts or omissions of [Offshore], [Offhsore's] agents,
> employees, representatives, or subcontractors, whether or not such personal injury,
> death or loss of or damage to property arose out of the joint and/or concurrent
> negligence of Exxon, its agents, employees, representatives and/or the
> unseaworthiness of any vessel.

Id. at 495 n. 7.

Diamond M later filed a cross-claim against Exxon seeking indemnification for sums

which Diamond M may be liable to Foreman based upon the indemnity provision of the parties'

contract.  Exxon then filed a third-party complaint against Offshore seeking indemnity for any

sums which Exxon may be liable directly to Foreman and any sums for which is may be required

to indemnify Diamond M.  Id. at 492.

After a trial on the issue of liability, the jury found Exxon, Diamond M, and Offshore were negligent and each contributed to Foreman's injuries in the following proportionate percentages: Exxon – 10%; Diamond M – 55%; and Offshore – 35%.  The parties later agreed Foreman would receive a settlement of $323,000, with the district court to decide the contractual indemnity issues that were the basis of the cross-claim and third party complaint.  Id.  Ultimately, the court concluded Offshore was obligated to contribute 45% of the settlement fund, representing 35% attributable to Offshore's fault and 10% attributable to Exxon's fault.[3]  Exxon was to contribute the remaining 55%, representing 55% attributable to Diamond M for which Exxon contractually agreed to indemnify Diamond M.  However, the district court did not allow Exxon indemnity from Offshore for the 55% Exxon was assessed because "Offshore had agreed only to indemnify Exxon for Exxon's direct liability and that Offshore had not agreed to assume Exxon's contractual liability to Diamond M . . . ."  Id. at 493.

On appeal, the Fifth Circuit Court of Appeals affirmed the district court's determination that Exxon was not entitled to amounts from Offshore for which it was liable to Diamond M pursuant to the agreement between Exxon and Diamond M.  The Fifth Circuit concluded "Offshore's obligation to indemnify Exxon for Exxon's contractual liability to Diamond M may arise only from the plainly expressed intention of the parties, spelled out in unambiguous terms."  Id. at 498.  The Fifth Circuit explained the rationale for such a requirement:

> A contract to indemnify another for his own negligence imposes an extraordinary obligation.  Thus an indemnitor is entitled to express notice that under his agreement, and through no fault of his own, he may be called upon to pay damages caused solely by the negligence of his indemnitee.  *For the same reasons[,] express notice is required where a party seeks to shift his contractual liability to indemnify a third party.*

---

[3] On appeal, the Fifth Circuit Court of Appeals concluded the district court erroneously determined Offshore should bear the burden for 35% of the settlement fund in accordance with its 35% of fault as assigned by the jury because employees' compensation is the exclusive liability of Offshore to Foreman.  Foreman, 770 F.2d at 493-94.

Id. at 498 (quoting Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 333 (5ᵗʰ Cir. 1981).  The

Fifth Circuit found the terms of the contract between Exxon and Offshore demonstrated the parties

did not intend to provide Exxon indemnification for Exxon's contractual liability to Diamond M.

Id. at 496.  Therefore, Exxon was not entitled to amounts from Offshore for which it was liable to

Diamond M.

In *Jacobs Constructors, Inc. v. NPS Energy Services, Inc.*, the Third Circuit Court of

Appeals looked to the Fifth Circuit's decision in *Foreman* when it concluded an obligation to

indemnify an indemnitee's claim for losses contractually assumed by the indemnitee "must be

stated plainly, in clear and unequivocal language."  264 F.3d at 372.  The Third Circuit believed

such plain, clear, and unequivocal language is necessary to give rise to such an obligation because

an agreement to indemnify another for his contractual liability to a third party imposes an

obligation on the indemnitor, regardless of the fault of the indemnitor, and the "extent of such

obligation is uncertain, indefinite, and entirely in the hands of the indemnitee." Id. (internal

quotations omitted).  The same policy considerations underlie the principal that courts do not

interpret an indemnity agreement to indemnify a party against the consequences of its own

negligence unless such construction is clear.  Jacobs Constructors, Inc., 264 F.3d at 372; Foreman,

770 F.2d at 498.

This Court believes North Dakota courts would follow the above analysis of indemnity

agreements by the Fifth and Third Circuit Court of Appeals.  The North Dakota Supreme Court

has consistently held that an indemnity agreement will not be interpreted to indemnify a party

against the consequences of its own negligence "unless that construction is very clearly intended."

Rupp v. American Crystal Sugar Co., 465 N.W.2d 614, 616 (N.D. 1991) (quoting Briston, 352

N.W.2d at 196.  See also Barness v. Gen. Diesel & Equip. Co., Inc., 422 N.W.2d 819 (N.D. 1988);

Vanderhoof v. Gravel Prods., Inc., 404 N.W.2d 485 (N.D. 1987). In addition, under North Dakota law, any ambiguity in an indemnity provision is to be strictly construed against the entity receiving indemnity. See Specialized Contracting, Inc., 2012 ND 259, ¶ 15, 825 N.W.2d 872. Without question, these principles are the springboard from which North Dakota courts interpret indemnity agreements. Therefore, the Court predicts the North Dakota courts would follow the Fifth Circuit's *Foreman* decision and the Third Circuit's *Jacobs Constructors, Inc.* decision and interpret a contract to indemnify a party for claims based upon contractually assumed liability only when such a construction is very clearly intended by the parties. The Court is, therefore, now tasked with determining whether the language of the Lease between S&S Sales and RES Investments expresses a clear intent by the parties that RES Investments indemnify S&S Sales for claims arising from S&S Sales' contractual liability to EOG Resources and its subcontractors.[4]

Paragraph 6 of the Lease provides the "Lessor agrees to indemnify the Lessee and hold the Lessee harmless for *loss resulting from sickness or injury including death*, sustained by Lessor or by any employee of the Lessor *in connection with the operation of said leased equipment*." See Docket No. 31-9, p. 3 (emphasis added). Paragraph 8 of the Lease further provides the "Lessor shall indemnify and hold Lessee harmless from any and all suits, claims, fines, losses, or other expenses *arising out of injury to any person* . . . ." See Docket No. 31-9, p. 3 (emphasis added). The Court concludes as a matter of law that these provisions of the Lease do not encompass a duty by RES Investments to indemnify S&S Sales for its contractual liability to EOG Resources and EOG Resources' subcontractors.

---

[4] The Court notes that in its analysis of the indemnity provision of the Lease, the Court does not pass on the merits of EOG Resources' third-party complaint against S&S Sales.

### i.     Indemnity Under Paragraph 6 of the Lease

The plain language of the Lease defines the scope of RES Investments' duty to indemnify S&S Sales.  Paragraph 6 of the Lease provides RES Investments is to indemnify S&S Sales for loss resulting from sickness or injury, including death, of RES Investments and/or RES Investments' employees in connection with the operation of said leased equipment.  See Docket No. 31-9, p. 3.  S&S Sales contends RES Investments agreed to indemnify and hold S&S Sales harmless from any and all losses in connection with or arising out of the death of Mortinson based upon the language of Paragraph 6.  S&S Sales specifically contends the Court should interpret the words "in connection with" as used in Paragraph 6 so broadly as to encompass its loss, namely the defense of and indemnity to EOG Resources.  The Court declines to do so.

In support of its contention the Court should interpret the words "in connection with" in the language of the Lease to include indemnification of S&S Sales for its contractual indemnification to EOG Resources, S&S Sales cites two cases from the Eighth Circuit:  *In re Fitzgerald Marine Repair, Inc.*, 619 F.3d 851 (8th Cir. 2010), and *Gibbons v. Graves Construction Company, Inc.*, 727 F.2d 753 (8th Cir. 1984), for the proposition that the term "in connection with" is to be construed to encompass "all activities" incident to or anticipated by the principal activity of the contract.  See Docket No. 71, p. 8.  However, *Fitzgerald Marine Repair* and *Gibbons* do not support interpreting the words "in connection with" when used in an indemnity provision so broadly to include the indemnitee's contractual liability to a third party, unless such a construction is very clearly intended by the parties.

In *Gibbons*, a railroad employee brought suit against the railroad for injuries sustained when he was loading ties in connection with the removal of a branch line.  The railroad sought indemnification from Graves Construction Company (Graves"), based upon an indemnity

14

agreement between the parties. Graves had entered into a subcontract with Early Iron and Metal Company ("Early Iron") to furnish labor and materials necessary to remove an abandoned railroad branch line, which was the subject of a primary contract between Early Iron and Williams Gibbons, as Trustee in Bankruptcy of the Chicago, Rock Island and Pacific Railroad Company. The Eighth Circuit was tasked with interpreting a subcontract between Graves and Early Iron. Gibbons, 727 F.2d at 755.

The primary contract between Early Iron and Gibbons contained an indemnity provision in favor of the railroad. The subcontract between Early and Graves incorporated the terms of the primary contract between Gibbons and Early Iron, including the indemnity provision. Id. at 756. Therefore, the Eighth Circuit analyzed whether the indemnity provision of the Early Iron-Gibbons contract, incorporated by reference into the Early Iron-Graves subcontract, provided indemnity to the railroad for injuries sustained by railroad employees while performing work in connection with the contract. The Eighth Circuit noted the words "in connection with" are to be construed broadly and then concluded the indemnity provision covers an injury to an employee in connection with the performance of the contract. Id.

S&S Sales' reliance on *Gibbons* is misplaced. Here, S&S Sales seeks indemnification from RES Investments for its contractual liability to EOG Resources in connection with a master service agreement between S&S Sales and EOG Resources. Unlike the subcontract in *Gibbons*, the Lease between S&S Sales and RES Investments did not incorporate by reference the indemnification provision of the S&S Sales-EOG Resources Master Service Agreement. Further, in *Gibbons*, because the subcontract incorporated by reference the terms of the primary contract, the Eighth

Circuit only needed to look to the primary contract to determine indemnification.[5]  Here, the Court

must separately analyze the indemnification provisions of the S&S Sales-RES Investments Lease

and the EOG Resources-S&S Sales Master Service Agreement.  Had S&S Sales' incurred a "loss"

because Carter filed suit directly against S&S Sales for its alleged negligence, then the Court may

follow the Eighth Circuit's holding in *Gibbons* and find the Lease clearly provides indemnity to

S&S Sales for the death of Jereme Mortinson sustained "in connection with the operation of said

leased equipment."  See Docket No. 31-9, p. 3.  However, the path by which S&S Sales seeks

indemnity from RES Investments is wholly distinguishable from the path by which Graves owed

a duty to indemnify Gibbons in *Gibbons*.[6]

Although the Court agrees the words "in connection with" are broad, and must be so

construed by the Court, the plain language of the contract can certainly limit the breadth of the

words "in connection with."   In construing the terms of a contract, the contract should be

considered as a whole, and "every clause, sentence, or provision, should be given effect consistent

with the main purpose of the contract."  Bridston, 352 N.W.2d at 196 (citing Delzer Constr. Co. v.

New Marian Homes Corp., 117 N.W.2d 851, 856 (N.D. 1962) (internal quotations omitted).   In

this case, Paragraph 6 of the Lease provides the "Lessor agrees to indemnify the Lessee and hold

the Lessee harmless for loss resulting from sickness or injury including death, sustained . . . by any

employee of the Lessor . . . in connection with the operation of said leased equipment."  See Docket

No. 31-9, p. 3.  S&S Sales' alleged "loss" results, not from the sickness or death of an RES

---

[5] To the extent the subcontract in *Gibbons* provided that Graves was to indemnify the railroad because the subcontract expressly incorporated the terms of primary contract, *Gibbons* supports this Court's conclusion that the parties must express a clear mutual intent for indemnity of a party's contractual liability to a third party.

[6] S&S Sales also directs the Court to the Eighth Circuit's decision of *In re Fitzgerald Marine Repair, Inc.*, 619 F.3d 851 (8th Cir. 2010), to support its contention the Court should interpret the term "in connection with" in the language of the Lease to include indemnity of S&S Sales for its contractual liability to EOG Resources.  The Court finds the decision of *Fitzgerald Marine Repair* unpersuasive and inapplicable to the case at bar for the same reasons the Court finds S&S Sales' reliance on *Gibbons* misplaced.

Investments employee that occurred in connection with the leased equipment, but results solely from S&S Sales' contractual liability to EOG Resources. S&S Sales concedes "[t]he loss S&S incurs is the defense of the Third-Party Complaint filed by EOG against S&S." See Docket No. 71, p. 8. S&S Sales' loss cannot be said to be "in connection with" the operation of the leased equipment. But for the indemnification provisions in the master service agreement entered in between S&S Sales and EOG Resources, S&S would not have a loss from which to seek indemnity.

### ii.    Indemnity Under Paragraph 8 of the Lease

The Court similarly concludes the language of Paragraph 8 of the Lease does not require RES Investments to indemnify S&S Sales for its contractual liability to EOG Resources. Paragraph 8 of the Lease provides the "Lessor shall indemnify and hold Lessee harmless from any and all suits, claims, fines, losses, or other expenses arising out of injury to any person of [sic] persons, or damage to property, or unreasonable delay, loss or damage to cargo sustained or which may be alleged to have been sustained by shippers, consignees or interested third parties *as a result of any negligence or alleged negligence on the part of the Lessor or Lessor's employees*." See Docket No. 31-9, p. 3 (emphasis added). Citing to the North Dakota Supreme Court's decision of *Hoge v. Burleigh County Water Management District*, 311 N.W.2d 23 (N.D. 1981), S&S Sales contends Paragraph 8 entitles S&S Sales to indemnity and to be held harmless from "any and all" suits, claims, fines or losses that arise out of injury to a person, including the loss it has sustained in defending against EOG Resource's third party action based upon "the plain and unambiguous terms" of Paragraph 8. See Docket No. 71, p. 11.

In *Hoge*, the North Dakota Supreme Court interpreted an indemnity provision within a deed that stated: "The [Water Management District] hereby agrees to indemnify and to hold and

17

save [the Hoges] from any and all damages to their lands not conveyed herein in fee arising from the use of the rights, easement and right-of-way herein granted." 311 N.W.2d at 26. The Water Management District obtained a deed for lands belonging to the Hoges to contruct a flood control project. Id. After construction of the project, flood waters inundated the Hoges' land and caused damage. The North Dakota Supreme Court concluded a plain reading of the indemnity clause indicated an intent by the parties that the Water Management District would indemnify the Hoges for *all* damage their lands sustained due to the construction of the flood control project. Id. at 28.

The Court does not read Paragraph 8 as an agreement by RES Investments to indemnify and save S&S Sales harmless if S&S is damaged in "any way." Instead, as the North Dakota Supreme Court directs in *Hoge*, the Court construes the Lease Agreement in accordance with the rules for construction of contracts generally. Hoge, 311 N.W.2d at 27. Therefore, the Court will give effect to the mutual intentions of the parties, ascertained from the language of the Lease. Id.

The language of Paragraph 8 states that RES Investments is to indemnify and hold S&S Sales harmless for "any and all suits, claims, fines, and losses, or other expenses . . . ." See Docket No. 31-9, p. 3. However, the language of the latter portion of the first sentence in paragraph 8 qualifies the conditions under which RES Investments is to indemnify and hold S&S Sales harmless for "any and all suits, claims, fines, and losses, or other expenses." Paragraph 8 requires RES Investments to indemnify S&S Sales against any and all suits, claims, fines, and losses, or other expenses when such suits, claims, fines, losses, or other expenses *arises out of* injury to any person or persons, or damage to property, or unreasonably delay, loss or damage to cargo sustained or which may be alleged to have sustained.

S&S Sales argues its "loss" arises out of the death of Mortinson. However, the Court finds S&S Sales' loss arises out of the master service agreement it entered into with EOG Resources.

Such a loss falls outside the scope of the qualifying language [i.e. injury to any person o[r] persons, or damage to property, or unreasonably delay, loss or damage to cargo sustained or which may be alleged to have sustained] triggering RES Investment's duty to indemnify S&S Sales for "any and all suits, claims, fines, and losses, or other expenses."  Although the indemnification provision at issue in *Hoge* has similar qualifying language triggering the Water Management District's duty to indemnify the Hoges [i.e. damages arising from the use of the rights, easement and right-of-way granted in the deed], the loss sustained by the Hoges fell within the qualifying event to trigger indemnification as the Court concluded the damage to Hoges' roads, crops, and machinery and their loss of cattle resulted from the Water Management District's construction of the flood control project.  Hoge, 311 N.W.2d at 27-28.

The Court finds the Lease between RES Investments and S&S Sales does not express a clear mutual intent by the parties that RES Investments indemnify S&S Sales for S&S Sales' contractual liability to EOG Resources.  The Court agrees with RES Investments that interpreting an indemnification agreement to cover the indemnitee's contractual liability to a third party when broad language is used creates an "open-ended, unrestricted agreement" to indemnify.  In fact, no language in the Lease puts RES Investments on notice of a duty to indemnify S&S Sales for S&S Sales' contractual liability to EOG Resources.  Instead, the language of the Lease provides the scope of the indemnity.  The Court's interpretation of the terms of the Lease leads the undersigned to conclude S&S Sales and RES Investments did not intend to provide S&S Sales indemnification for S&S Sales' contractual liability to EOG Resources.  RES Investments only agreed to indemnify S&S Sales for S&S Sales' direct liability, and RES Investments did not agree to assume S&S Sale's contractual liability to EOG Resources pursuant to the S&S Sales-EOG Resources master service agreement.

**B.    RES INVESTMENTS' DUTY TO DEFEND**

In the Report and Recommendation, Judge Klein also concluded RES Investments has a duty to defend S&S Sales against the third-party claims of EOG Resources. <u>See</u> Docket No. 158, p. 12.   Section 22-02-07 of the North Dakota Century Code outlines rules for interpreting indemnity agreements. <u>See</u> N.D.C.C. § 22-02-07.   Subsection 4 of Section 22-02-07 provides: "The person indemnifying is bound, on request of the person indemnified, to defend action or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the right to conduct such defense if that person chooses to do so." N.D.C.C. § 22-02-07(4).  The provisions of N.D.C.C. § 22-07-02 apply unless a contrary intention appears in the contract. <u>Specialized Contracting, Inc.</u>, 2012 ND 259, ¶ 18, 825 N.W.2d 872.

In this case, the question for the Court to consider is whether RES Investment's duty to defend encompasses the duty to defend S&S Sales's against the third-party action by EOG Resources.   Subsection 4 of Section 22-02-07 limits the scope of the duty to defend to "matters embraced by the indemnity." <u>See</u> N.D.C.C. § 22-02-07(4).   The matters embraced by the indemnity in this case are "loss resulting from sickness or injury including death, sustained by Lessor or by any employee of the Lessor in connection with the operation of said leased equipment" and suits, claims, fines, losses, or other expenses "arising out of injury to any person of [sic] persons, or damage to property, or unreasonably delay, loss or damage to cargo sustained or which may be alleged to have sustained . . . ." <u>See</u> Docket No. 31-9, p. 3.  The matters embraced by the indemnity do not include loss resulting from S&S Sales' contractual liability to EOG Resources.  The Lease does not unequivocally require RES Investments to defend S&S Sales in an indemnification action brought by a third party.   Paragraphs 6 and 8 do not contain any agreement by RES Investments to defend S&S Sales against EOG Resources' claims based upon

S&S Sales contractually assumed liability.  In the same way S&S Sales is not entitled to indemnification by RES Investments, S&S Sales is not entitled to a defense by RES Investments against EOG Resource's action.  No contrary intention appears in the contract.

The Court concludes as a matter of law RES Investments does not have a duty to indemnify, defend, or reimburse S&S Sales against any and all losses it has incurred and/or may incur in connection with or arising out of the third-party indemnification action brought against S&S Sales by EOG Resources.


IV.    <u>CONCLUSION</u>

The Court has carefully reviewed the Report and Recommendation, relevant case law, and the entire record.  For the reasons set forth above, the Court **DECLINES TO ADOPT** the Report and Recommendation (Docket No. 158) and **DENIES** S&S Sales' motion for summary judgment (Docket No. 70).  Further, at this stage of the case, the Court **DENIES WITHOUT PREJUDICE** the motion to bifurcate the trial of the wrongful death claims from the third-party and fourth-party indemnity claims (Docket No. 131).

**IT IS SO ORDERED.**

Dated this 12th day of March, 2015.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court